**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JESSE CASTILLO,

       Plaintiff,

       v.

ANNA STEPIEN, et. al.,

       Defendants.

Civ. No.  05-1073 (DRD)

**O P I N I O N**

*Appearances by:*

Jesse Castillo
SBI #456053-B
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

     *Pro Se Plaintiff,*

PODVEY, MEANOR, CATENACCI, HILDNER, COCOZIELLO & CHATTMAN, P.C.
The Legal Center
by:  Anthony Rainone, Esq.
Michael Francis Bevacqua, Esq.
One Riverfront Plaza
8th Floor
Newark, NJ 07102

John J. McKniff, Esq.
Mark J. Semeraro, Esq.
87 Fieldstone Place
P.O. Box 4493
Wayne, NJ 07474

     *Attorneys for Defendant Dan Daly, Jr.*

SCARINCI HOLLENBECK
by:  Anthony Seijas, Esq.
Jessica V. Henry, Esq.
1100 Valley Brook Avenue
P.O. Box 790

Lyndhurst, NJ 07071

John J. McKniff, Esq.
Mark J. Semeraro, Esq.
87 Fieldstone Place
P.O. Box 4493
Wayne, NJ 07474

    *Attorneys for Defendant Henry Ellis, III.*

**<u>DEBEVOISE, Senior District Judge</u>**

    The present matter arises out of Defendants, Officer Dan Daly Jr. and Officer Henry Ellis

III's (collectively, "Defendants"), arrest of Plaintiff, Jesse Castillo, on September 6, 2003 at the

Kings Inn Hotel in Wayne, New Jersey.  Castillo seeks relief, pursuant to 42 U.S.C. § 1983 for

violations of his Fourth Amendment and Fourteenth Amendment rights, based on Defendants'

alleged unlawful search of his hotel room, destruction of and failure to properly transport

evidence, assault and use of excessive force against Castillo, denial of medical attention and

denial of Castillo's requests to make telephone calls after the arrest.  Further, Castillo alleges that

Daly committed perjury before the grand jury.  Castillo filed the present Complaint on February

22, 2005 against Defendants and a number of other named and unnamed parties.[1]  Castillo seeks

compensatory damages.  After the litigants completed discovery, Daly and Ellis each filed

separate summary judgment motions, pursuant to Fed. R. Civ. P. 56.  Defendants' motions are

granted in part and denied in part.

## I.  BACKGROUND

    Castillo did not respond to Defendants' motions, so his statement of the facts and proof of

his case will need to be taken from his Complaint and the deposition Defendants took of him.

Castillo is currently incarcerated at the South Woods State Prison in Bridgeton, New Jersey.  He

---

[1] On April 13, 2005, all the other defendant parties, with the exception of Daly and Ellis, were
terminated.

was charged with aggravated assault, receiving stolen property, robbery, and eluding.  (Castillo Dep. 85:25-86:12, August 30, 2005.)  Castillo pled guilty to robbery and eluding as part of a plea bargain.  (Id. 87:3-7.)  Daly and Ellis are police officers with the Wayne Police Department.

On February 22, 2005, Castillo filed a Complaint in this action against various defendants, including Ellis and Daly.  The claims are not numbered in the pro se Complaint, so the court will hereinafter refer to each of Castillo's claims as Count One through Count Seven, respectively, as numbered in this paragraph.  The Complaint alleges that:  (1) Ellis and Daly conducted an unlawful search of Castillo's hotel room and took unlawful control over Castillo's personal property under a defective search warrant; (2) Ellis and Daly destroyed and/or concealed evidence inside the car Castillo was driving and collected evidence without a chain of custody report; (3) Daly assaulted Castillo by driving his police car into the car Castillo was driving; (4) Ellis and Daly assaulted Castillo by kicking and punching him and yelling racial slurs; (5) Ellis and Daly subsequently denied Castillo medical attention; (6) Ellis and Daly denied Castillo access to a telephone; and (7) Daly committed perjury during the Grand Jury proceedings.  (Compl. ¶¶ I, J.)

The court dismissed the claims against two defendants, Murner and Hill, with prejudice because they were immune from the relief sought.  The court dismissed without prejudice the claims against the remaining defendants, with the exception of Daly and Ellis, for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The remaining parties entered discovery, which proceeded along a contentious trajectory.  Ellis and Daly moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 37(b), 30(d)(3), and 41(b), based on Castillo's failure to comply with discovery requests or produce certain evidence.  Magistrate Judge Cox Arleo denied the motions in a letter order dated October 12, 2006, noting

that although discovery had not been forthcoming, the court would not impose the extreme

sanction of dismissal.  Castillo moved to amend his Complaint on February 1, 2007.  Thereafter,

in an order dated July 26, 2007, Judge Arleo denied Castillo's motion to amend the complaint.

On April 9, 2007 and September 6, 2007, Magistrate Judge Salas denied Castillo's motions for

the appointment of pro bono counsel.  Castillo appealed the decision not to appoint pro bono

counsel on September 11, 2007.  The appeal was filed with the Court of Appeals for the Third

Circuit.  The Court of Appeals dismissed the appeal for lack of appellate jurisdiction, because the

Magistrate Judge's Order was not a final determination until the District Court reviewed it.  The

court affirmed Judge Salas's determination in an order dated June 19, 2008.  In an amended

scheduling order dated June 16, 2009, Magistrate Judge Shipp granted Defendants leave to file

motions for summary judgment.  Defendants did so on August 17, 2009.

On September 5, 2003, Plaintiff checked into Room 207 at the Kings Inn Hotel ("Kings

Inn") in Wayne, New Jersey.  (Castillo Dep. 21:20-25; Stevens Aff. ¶ 1.)  Castillo drove a 1997

Ford Explorer registered in the name of his girlfriend, Wanda Gonzalez.  (Castillo Dep. 22:7-18.)

Gonzalez had reported the vehicle stolen in connection with the investigation of a bank robbery

in Kearny, New Jersey.  (Id. 22:20-23:13.)  Castillo identified the license plate number of the

vehicle on his sign-in sheet at the Kings Inn.  (Id. 24:16-19.)

On September 6 at about 1:00 a.m., Daly was patrolling the Kings Inn parking lot and

checking the registrations of the vehicles parked in the lot.  (Daly Decl. ¶ 3, Ex. A, hereinafter

"Daly Police Report" at 1.)  He checked the license plate of the 1997 Ford Explorer and learned

that the vehicle had been reported stolen in connection with a bank robbery in Kearny.  (Id.)

Daly asked Dave Stevens, the Kings Inn front desk clerk, about the Ford Explorer.  (Stevens Aff.

¶ 7.)  Stevens told Daly that a guest named Jesse Castillo had signed in to Room 207 and had

noted the license plate of the Ford Explorer on his sign-in sheet.  (Stevens Aff. ¶ 10.)  Stevens

described Castillo's physical appearance to Daly.  (Daly Police Report at 2.)  Daly contacted the

Wayne Police Department and stood by while the Wayne Police Department contacted the

Kearny Police Department.  (Daly Police Report at 2.)  Daly was informed that Stevens's

description of Castillo matched the description of the suspect in the Kearny bank robbery.  (Id.)

Daly was informed that the Kearny police detectives were en route to the Kings Inn, and advised

to stand by until they arrived.  (Id.)  Ellis joined Daly at the Kings Inn to serve as back-up.  (Ellis

Decl. ¶ 3, Ex. A, hereinafter "Ellis Police Report.")

 Ellis and Daly positioned their vehicles in a parking lot adjacent to the Kings Inn parking

lot in order to detect any movement by the Ford Explorer.  (Ellis Police Report at 1, Daly Police

Report at 2.)  Daly believed that Castillo could be armed, violent and dangerous.  (Daly Decl. ¶

12.)  Castillo came out of his hotel room, entered the Ford Explorer, and began to pull out.

(Castillo Dep. 25:6-7; Daly Decl. ¶ 14; Ellis Police Report.)  Daly and Ellis drove from the

adjacent parking lot into the entrance of the Kings Inn parking lot.  (Castillo Dep. 25:9-12.)

 At this point in the sequence of events, the account of Castillo differs from the accounts

of Daly, Ellis and Stevens.  Castillo states that he engaged his breaks to stop the car when he saw

the police cars approaching.  (Id. 109:1-110:3.)  He asserts that Daly's vehicle approached and

collided head-on with the Ford Explorer, while Ellis pulled up to the side of the Ford Explorer.

(Id. 26:9-13.)

 Daly, on the other hand, states that he and Ellis pulled into the Kings Inn lot and parked

their cars in the Kings Inn exit leading to Route 46 to block Castillo's mode of escape.  (Daly

Decl. ¶ 14.)  Daly believed it was necessary to block Castillo to avoid a dangerous high speed

pursuit on the highway.  (Id.)  Daly states that Castillo accelerated his vehicle while driving

towards the Kings Inn exit and then crashed the Ford Explorer into Daly's police car.  (Id. ¶ 17.)

The Ellis Police Report also states that Castillo's vehicle crashed into Daly's vehicle, but with

less detail.

Stevens's account comports with the accounts of Defendants.  Stevens states that he saw

a vehicle pull out towards the Kings Inn exit.  (Stevens Aff. ¶ 11.)  Then he saw a police car

drive in from the service road.  (Id.)  The police vehicle stopped directly in front of the car,

blocking the Kings Inn entrance.  (Id. ¶ 12.)  The car that was trying to leave crashed into the

police vehicle.  (Id.)

According to Castillo, the force of the crash knocked him out.  (Compl. ¶ I.)  He woke up

and two police officers were screaming, with guns pointed at him.  (Castillo Dep. 166:8-167:5.)

He put his hands up.  (Id. 163:9.)  He felt dizzy and weary from the collision.  (Id. 169:4.)  Daly

went to the door of the car and pulled Castillo out, then dragged him away from the car.  (Id.

167:8-168:1.)  Daly pulled Castillo to a kneeling position.  (Id. 162:19.)  Daly jumped on

Castillo's back.  (Id. 170:1.)  Daly pushed Castillo to the ground onto his stomach.  (Id. 170:3.)

Daly smashed his face into the ground.  (Id. 47:7-8)  Daly put handcuffs on Castillo, then started

punching and kicking Castillo in the head and the body.  (Id. 170:8.)  Ellis rolled Castillo's body

back and forth to check his pockets, looking for a weapon.  (Id. 179:21-180:6.)  Both officers

yelled, "where is the fucking gun, you spick?"  (Id. 171:6-7.)  Both officers pushed Castillo's

face into the ground.  (Id. 171:3-4; 75:16.)  Ellis and Daly took turns punching Castillo.  (Id.

173:22.)  Castillo asserted in his deposition that the motel clerk came out while he was being

assaulted and said angrily to the police officers, "You can't be doing that here, take that

somewhere else."  (Id. 63:22-64:5.)

According to Daly, after the collision, he and Ellis exited their respective vehicles, drew

their service weapons, and ordered Castillo to exit his vehicle and show them his hands.  (Daly Decl. ¶ 18.)  Ellis and Daly ordered Castillo to get onto the ground.  (Daly Police Report at 2.)  Ellis covered Castillo while Daly handcuffed and searched him.  (Id.)  Daly advised Castillo of his Miranda rights and learned that he was Jesse Castillo.  (Id.)  Daly found Castillo's wallet in his pants pocket.  (Id.)  The wallet contained Castillo's identification and $1,513.00, in cash. (Id.)  Daly contacted headquarters.  (Id.)  Officer Corsiglia responded and secured Castillo's hotel room until the arrival of the Kearny Police Department.  (Id.)  Ellis transported Castillo to the Wayne Police Station ("Station").  (Castillo Dep. 47:18.)

According to Stevens, after the collision, Defendants exited their cars and detained Castillo.  (Stevens Aff. ¶ 13.)  Stevens watched as Castillo was handcuffed and put in the police vehicle.  (Id. ¶ 14.)  Stevens did not hear any loud arguing or derogatory comments directed at Castillo, nor did Stevens see either officer kick, punch, strike, or physically harm Castillo. (Stevens Decl. ¶ 14.)

At the Station, Castillo was placed in a cell pending the arrival of the Kearny detectives for questioning.  (Daly Police Report at 3.)  Castillo asserts that he was processed by Defendants. (Castillo Dep. 81:14.)  Defendants "mushed" Castillo, pushing his face back.[2]  (Id. 81:11-20.)

Daly asserts that Castillo stated that he was not injured in the collision, other than a small cut on his lip.  (Daly Police Report at 4.)  Daly or Ellis gave Castillo some tissues, gauze, and a moist toilette to wipe his lip.  (Id. 59:4-5.)  Castillo asked to call a doctor about his lip.  (Id. 56:24-57:7.)  Defendants refused to let Castillo make any phone calls or use the telephone to call a doctor, for safety reasons.  (Castillo Dep. 57:13-15.)  Daly asserts that Sergeant Shenekji had

---

[2] Castillo did not clearly define the term "mushed" during his deposition except to say "mushing my face…mushing my face back."  (Castillo Dep. 81:19-20.)  "Mush" is a colloquialism that is defined as "[t]he act of placing one's hand on another person's face and pushing the person backwards."  Urban dictionary, http://www.urbandictionary.com/define.php?term=mush.

ordered that Castillo was not allowed to make a phone call for fear that allowing a phone call could compromise the ongoing bank robbery investigation and possibly endanger officers who were guarding the unsearched hotel room.  (Daly Police Report at 3-4.)

At the Station, Defendants did not interrogate Castillo, except to ask him, "where is the gun?"  (Id. 84:18-21.)  The Kearny officers arrived at the Station and interrogated Castillo about the robbery.  (Castillo Dep. 82:17-83:2.)  Defendants were not in the room during the interrogation.  (Id. 83:22.)

Castillo claims that Defendants searched his car in the Kings Inn parking lot after they arrested him.  (Castillo Dep.145:19-21.)  Defendants assert that they did not search the interior of Castillo's car because they did not want to contaminate potential evidence.  (Daly Police Report at 2-3.)  When the officers from Kearny arrived at the station, they informed the Wayne officers that they had already developed evidence against Castillo for the bank robbery and had a warrant for his arrest.  (Id. at 3.)  The Kearny officers searched Castillo's impounded car with the permission of Gonzalez, the car's title owner.  (Id.)  A towing company transported the car from the Wayne Police Department and it was secured in the Kearny Police Garage.  (Bevacqua Decl. Ex. I, Supplementary Investigation Report of Officer John View, hereinafter "View Police Report" at 1.)

Daly gave the Kearny officers evidence he had obtained from Castillo, including receipts from Kings Inn that were seized as evidence by Sergeant Shenekji and receipts from a Sprint store from Castillo's wallet.  (Id.)  Daly provided the court with photocopies of the Evidence/Property Pouch containing the Kings Inn and Sprint receipts.  (Bevacqua Decl. Ex. K.) The label on the pouch contains a chain of custody report.  (Id.)  Daly also provided the court with a photocopy of a form acknowledging the release of suspected robbery proceeds, in the

amount of $1,513.00, to Kearny Lt. Detective Stephen Durkin.  (Bevacqua Decl. Ex. J.)

The Kearny officers went to the Kings Inn to relieve the officer who was guarding

Castillo's room while they attempted to obtain a search warrant.  (Daly Police Report at 3.)

Judge Murner of the Wayne Township Municipal Court issued a warrant for the Kearny Police

Department to search Kings Inn hotel room #207.  (View Police Report at 1.)  Kearny Police

Officers, Detective Sergeant Michael Blevis, Detective John View, Detective John Plaugic, and

Detective Lieutenant Stephen Durkin executed the search warrant.  (Id.)  They took into custody

three baggies containing suspect crack cocaine, a syringe, and a black book-bag containing blue

shorts and a black T-shirt.  (Id.)  They left a copy of the search warrant and an inventory of all

items taken with the Kings Inn manager.  (Id.)  Blevis signed a document titled "Search Warrant

Return" stating that he had searched the premises described in the warrant.  (Seijas Decl. Ex. L.)

The manager stated that per hotel procedure, the Kings Inn would take custody and hold onto

any personal items left in the room for a specified period of time.  (Id.)  Castillo claims that Daly

and Ellis searched the hotel room and failed to properly handle the evidence they found there.

However, Castillo admits that he does not know whether Daly or Ellis entered his hotel room or

who executed the search warrant.  (Castillo Dep. 35:24-36:8)

After the alleged assault, Castillo's lip was cut and he was bleeding from the nose, mouth

and ears.  (Id. 47:7-8; 58:9; 52:16-17.)  He began to suffer back pain about six hours after the

incident, which he attributed to the collision and asserts was exacerbated by the assault.  (Id.

54:21-55:2; 182:21-183:18.)

During the deposition, Castillo authenticated his signature on an Inmate Booking

Assessment form from the Passaic County Jail, dated September 6, 2003.  (Castillo Dep. Ex. C-

3.)  The form contains check-boxes, marked "yes" or "no" for various medical and physical

conditions.  None of the boxes are checked "yes," including "Skin—Wound/Burn" or "Wounds or skin ulcers."  (Id.)  The reviewing nurse did not make any additional remarks in either of the two "Comments" sections.  (Id.)  Castillo contends that the form does not accurately reflect his physical state at the time of the examination, and states that he did not attempt to correct the person who filled out the form before he signed it.  (Castillo Dep. 66:1-66:23.)  The medical examiner told Castillo that "everything would heal up."  (Id. 58:7.)

A medical report dated September 15, 2003 notes that Castillo complained of musculoskeletal pain and was prescribed Motrin for it.  (Castillo Dep. Ex. C-4.)  Castillo admitted that September 15 was the first date on which he complained about back pain to a doctor or other medical provider.  (Id. 70:18-20.)  A doctor in the prison told Castillo that he suffers from sciatica.[3]  (Id. 53:20-21.)  Castillo believes his sciatica was caused by the assault.  (Id. 75:3.)  The doctors were not able to ascertain the cause of the condition.  (Id. 74:22-23.)  He claims that he had no back problems before the incident.  (Id. 54:8.)

## II.  DISCUSSION

Defendants argue that the record contradicts Castillo's claim that either officer was involved with the search of Castillo's hotel room or the Ford Explorer.  Further, Daly argues that Castillo had no reasonable expectation of privacy in a car that he did not own.  Daly contends that based on Castillo's guilty plea and the record as a whole, there is no sufficient basis on which a reasonable jury could find that Daly rammed his car into the vehicle Castillo was driving.  Further, Daly argues that even if he did ram his car into Castillo's vehicle, that use of force was not excessive under the Fourth Amendment.  Daly moreover argues that even if the

---

[3] Sciatica is defined as "a syndrome characterized by pain radiating from the back into the buttock and into the lower extremity along its posterior or lateral aspect, and most commonly caused by prolapse of the invertebral disk; the term is also used to refer to pain anywhere along the course of the sciatic nerve."  Dorland's Illustrated Medical Dictionary 1494 (27th ed. 1988).

use of force was excessive, he is protected by qualified immunity.   Daly and Ellis both assert

that they are entitled to qualified immunity for Castillo's § 1983 claims and "good faith"

immunity pursuant to the New Jersey Tort Claims Act.  Defendants argue that Castillo's claims

are so utterly discredited by the record that no genuine issue whether they assaulted Castillo

exists.  Defendants contend that Castillo's state law bodily injury claims are insufficient to meet

the New Jersey Tort Claim Act threshold because Castillo has suffered no substantial permanent

loss of bodily function or permanent disfigurement.    Additionally, both Defendants argue that

Castillo has provided no evidence that he filed a Notice of Claim with Wayne County.  Finally,

Daly argues that no civil cause of action for perjury exists, and that even if it did, Castillo would

be unable to establish a <u>prima facie</u> case that Daly committed perjury before the grand jury.

### A.    Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact

and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For

an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury

could find for the non-moving party."  <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir.

2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under

governing law."  <u>Id.</u>  Disputes over irrelevant or unnecessary facts will not preclude a grant of

summary judgment.

In a motion for summary judgment, the moving party has the burden of showing that no

genuine issue of material fact exists.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When

the moving party does not bear the burden of proof at trial, the moving party may discharge its

burden by showing that there is an absence of evidence to support the non-moving party's case.

<u>Id.</u> at 325.  If the moving party can make such a showing, then the burden shifts to the

non-moving party to present evidence that a genuine issue of fact exists and a trial is necessary.

Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a

genuine issue of material fact, not just create "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and

their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal

Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to

weigh the evidence and determine the truth of the matter, but, rather, to determine whether there

is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there

are no issues that require a trial, then judgment as a matter of law is appropriate.

**B.**     **Castillo's Failure to Respond to Defendants' Motions**

Ellis and Daly both filed their motions for summary judgment on August 17, 2009.

According to an amended scheduling order issued by Magistrate Judge Shipp, Castillo was to

have filed opposition papers by September 30, 2009.  To date, Castillo has not filed opposition to

the motions.  Accordingly, the court will rule on Daly and Ellis's motions pursuant to Rule 56(e),

which states that "[i]f the opposing party does not so respond, summary judgment should, if

appropriate, be entered against that party."  In other words, Daly and Ellis are not entitled to

"default" summary judgment.  See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168,

175 (3d Cir. 1990) (internal quotations omitted) ("Even though Rule 56(e) requires a non-

moving party to set forth specific facts showing that there is a genuine issue for trial, it is well-

settled…that this does not mean that a moving party is automatically entitled to summary

judgment if the opposing party does not respond").  Rather, if a moving party meets its initial

summary judgment burden and the opposing party files no response, the court may determine

that the moving party is entitled to summary judgment as a matter of law.  See id. at 176.

**D.      Section 1983**

In order to prove his § 1983 claims against Daly and Ellis, Castillo must show that Daly

and Ellis were acting under color of state law and that while acting under color of state law, they

deprived him of a right secured by the Constitution.  See Gomez v. Toledo, 446 U.S. 635, 640

(1980); Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  There is no

question that at all relevant times, Ellis and Daly were acting under color of state law.  Because

they were police officers in the State of New Jersey, this element of Castillo's claim is not in

dispute.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 n.18 (1982) ("[S]tate employment

is generally sufficient to render the defendant a state actor.").  Castillo alleges various

deprivations of his Fourth and Fourteenth Amendment rights, and the court will take each one in

turn.

### i.      *Count One:  Search and Seizure of Hotel Room*

Castillo alleges that Ellis and Daly conducted an unlawful search of his hotel room in the

Kings Inn and took unlawful control over Castillo's personal property under a defective search

warrant, in violation of the Fourth Amendment.  A search and seizure that fails to conform to

Fourth Amendment standards may give rise to an action under § 1983.   The court finds that no

facts in the record support Castillo's claim and judgment in favor of Defendants is appropriate.

Before examining the merits of the claim, the court notes that this type of claim must be

predicated factually on a search by Ellis and Daly of the hotel room.  Several documents

submitted by Ellis and Daly provide undisputed evidence that Kearny police officers, not

Defendants, applied for and executed the search warrant of the hotel room.  The View Police

Report describes in narrative form the Kearny officers' steps to obtain and execute the warrant. Ellis provided, as exhibits to his attorney's certification, photocopies of (1) the search warrant signed by Judge Murner, (2) the Blevis affidavit in support of the application for the search warrant, (3) the search warrant return form signed by Blevis, and (4) the inventory of property taken under the warrant signed by Blevis. The View Police Report and inventory of property form indicate that Kearny officers Blevis, Durkin, View and Plaugic searched the hotel room. Further, it is undisputed that the Kings Inn took custody of any items remaining in the hotel room after the search.

The court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). However, no facts in the record support an inference in Castillo's favor. Castillo testified repeatedly that did not know whether Ellis or Daly had entered his hotel room at any point. (Castillo Dep. 34:25-37:8.) He admitted that the only support for his contention that Ellis or Daly searched his hotel room was his personal belief. (Castillo Dep. 151:24-152:4.) When asked whether he had any evidence to support his contention that Ellis or Daly had searched the hotel room, Castillo stated repeatedly that he was "not going to disclose that." (Castillo Dep. 152:1-153:3.) The court recognizes that "an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate record evidence on his behalf," and "under these circumstances, [] affidavits are about the best that can be expected from him" at the summary judgment phase of the proceedings. Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (internal quotations omitted). However, the court need not credit testimony that is not based on personal knowledge and that is clearly contradicted by the record.

Defendants met their burden of showing that no genuine issue of material fact supports a

finding that Ellis or Daly, rather than the Kearny officers, Blevis, Durkin, View and Plaugic, obtained and executed the warrant.  There is insufficient evidence on the record for a reasonable jury to return a verdict in favor of Castillo on Count One.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  Therefore, summary judgment will be granted in favor of Defendants for Count One.

     *ii.*       *Count Two:  Search and Seizure of Car*

     The Complaint alleges that Daly and Ellis destroyed, concealed, and collected evidence without a chain of custody report, in violation of the Fourth Amendment.  Castillo stated during his deposition that this claim was based on an alleged search of the Ford Explorer that Daly and Ellis conducted while he was handcuffed and locked in the patrol car in the Kings Inn parking lot after the arrest.  (Castillo Dep. 40:4-46:4.)  Defendants contend that no such search ever occurred.  Taking the facts in the light most favorable to Castillo, the court will consider this allegation to present the issue of whether a search of the Ford Explorer by Defendants after the arrest violated Castillo's Fourth Amendment right to be free from unreasonable searches.

     An illegal search or seizure can provide a basis for § 1983 liability.  See Wilson v. Layne, 526 U.S. 603 (1999).  "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967).  Two exceptions to the warrant requirement are relevant here:  first, the exception concerning a search of an automobile incident to an arrest, as developed by the Supreme Court of the United States in New York v. Belton, 453 U.S. 454 (1981), and most recently, in Arizona v. Gant, 129 S. Ct. 1710 (2009); second, the "automobile exception" for the search of an automobile when there is probable cause to believe that it contains evidence of

criminal activity, United States v. Ross, 456 U.S. 798 (1982).

In Belton, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460.  The rationale for the Belton exception, which drew its reasoning from Chimel v. California, 395 U.S. 752, 763 (1969), rests on the need for officer safety and evidence preservation.  Gant, 129 S. Ct. at 1716-18.  In Gant, however, the arrestee was already handcuffed and locked in the back of the police car at the time the search occurred.  Id.  The police had received a tip from an informant that a residence was being used to sell drugs; they knocked on the door and spoke with Gant, who identified himself.  The officers left and conducted a records search for Gant, which revealed that his driver's license was suspended.  They returned later that evening to stake out the house and Gant drove up in a car.  The officers arrested him for driving with a suspended license, handcuffed and secured him in a locked police vehicle, then searched his car and discovered drugs.  The Gant Court held that the Chimel rationale, adopted in Belton, did not support the search since it was impossible for Gant to access weapons or evidence while locked in the back of the police car.  Accordingly, the Court held that under the Chimel rationale, the police should only be allowed to search a vehicle incident to a recent occupant's arrest when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. Id. at 1719.

However, the Gant Court endorsed an additional situation, as set forth by Justice Scalia's concurrence in United States v. Thornton, 541 U.S. 615, 632 (2004), in which the search of an automobile incident to an arrest is justified; namely, where it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."  The Gant Court found that such an

exception did not apply to the case before it, since there was no reasonable basis to believe that the car would contain evidence of the crime for which Gant was arrested—driving while his license was suspended.

On the other hand, in <u>Thorton</u>, which laid the foundation for the <u>Gant</u> Court's holding, Justice Scalia found that an evidence-gathering search should be permitted under <u>Belton</u> because there was a reasonable basis to believe that relevant evidence would be found in the car.  In that case, an officer pulled over a vehicle bearing license tags that had been issued for another vehicle.  The driver pulled into a parking lot and exited the car.  The officer stopped him and the driver admitted to carrying drugs in his pocket, which he relinquished.  The officer then arrested the driver and, in a search of the vehicle incident to the arrest, found a gun.  Justice Scalia found that it was reasonable for the officer to believe that the car would yield evidence relevant to the drug offense.

Similarly, here it was reasonable for Defendants to believe that the car would yield evidence relevant to the robbery offense.  Based on the information they had about Castillo and the crime for which they arrested him, it was reasonable for Defendants to conduct a search of the Ford Explorer contemporaneous with the arrest for evidence connected to the bank robbery, such as a gun, and to seize any evidence they found, including clothing Castillo may have worn during the robbery and a phone he may have used in the course of the robbery.  As a search incident to an arrest, Defendants' actions did not violate the Fourth Amendment.

Additionally, under the "automobile exception," based on the ready mobility of automobiles, law enforcement officers may seize and search an automobile without a warrant if "probable cause exists to believe it contains contraband."  <u>United States v. Burton</u>, 288 F.3d 91, 100-101 (3d Cir. 2002) (quoting <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940, 116 S. Ct. 2485,

135 L. Ed. 2d 1031 (1996)).  There is no exigency element to this standard.  Maryland v. Dyson, 527 U.S. 465, 466-67 (1999).  Rather, there is a reduced expectation of privacy in an automobile. United States v. Chadwick, 433 U.S. 1, 13 (1977).  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  Ross, 456 U.S. at 825.  Under the automobile exception, "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained."  Id. at 809.  Probable cause existed if the facts and circumstances within Defendants' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the vehicle contained contraband.  See Beck v. Ohio, 379 U.S. 89, 91 (1964).

In Chambers v. Maroney, 399 U.S. 42, 52 (1970), the Supreme Court held that probable cause existed for the warrantless search of a vehicle used in an armed robbery.  In that case, four men were arrested after the vehicle in which they were riding was stopped by police shortly after an armed robbery of a service station.  Id. at 44.  The vehicle and its occupants matched the description of the robbery suspects.  Id.  The officers drove the car to the station and searched it without a warrant, finding firearms and other evidence.  Id.  The court held that, just as there was probable cause for the arrest, there was probable cause to search the car for guns and stolen money.  Id. at 47.

Similarly, here Defendants knew, based on information from the Kearny Police Department, that the vehicle had been reported stolen in connection with an armed bank robbery. The description of the robbery suspect and his vehicle matched their observations of Castillo and the Ford Explorer.  Therefore, Defendants had probable cause to believe that a firearm used in the robbery or other evidence of the crime may have been in the car.

Thus, under both the exception enunciated by <u>Gant</u> for a search of a vehicle incident to an arrest and the automobile exception, Defendants' alleged search of Castillo's vehicle passes Constitutional muster.  The court will grant summary judgment in favor of Defendants for Count Two.

### iii.        Count Three:  Excessive Force in Collision

Castillo claims that Daly assaulted him by driving his police car into the car Castillo was driving, in violation of the Fourth Amendment.  Daly contests that he rammed his vehicle into Castillo's Ford Explorer, and states that there is no genuine issue for trial on that question because Castillo's version of the facts are blatantly contradicted by the record.  In the alternative, Daly argues that even if he did crash his vehicle into Castillo's vehicle, the force was reasonable and necessary to prevent a potentially dangerous high speed pursuit on the highway.  Finally, Daly argues that he is entitled to qualified immunity from this claim.

The court must first determine whether a genuine issue of fact exists.  Castillo's account of the collision varies substantially from the accounts offered by Daly, Ellis, and Stevens.  Daly argues, citing to the Supreme Court decision in <u>Scott v. Harris</u>, 550 U.S. at 380, that Castillo's version of the events is so utterly discredited by the record that it should be viewed as a "visible fiction" by the court.  The argument in based on Castillo's guilty plea to N.J. Stat. Ann. 2C:29-2(b), for eluding in the second degree,[4] as well as the fact that the accounts differ so substantially.  (Bevacqua Cert. Ex. G, "Judgment of Conviction.")  The plea was accompanied by a condition that Castillo pay restitution in the amount of $3,552.30 to Wayne Township.  <u>Id.</u> Daly contends that the sum was for the repair of Daly's police vehicle.

---

[4] N.J. Stat. Ann. § 2C:29-2(b) provides that "[a]ny person, while operating a motor vehicle on any street or highway…who knowingly flees or attempts to elude any police or law enforcement officer having received any signal from such officer to bring the vehicle or vessel to a full stop commits a crime of the third degree; except that, a person is guilty of a crime in the second degree if the flight or attempt to elude creates a risk of death or injury to any person."

A guilty plea is admissible in a subsequent civil action as an admission.  See Fed. R. Civ.

P. 801(d)(2); Bower v. O'Hara, 759 F.2d 1117, 1126 (3d Cir. 1985) (admitting defendant's guilty

plea in criminal proceeding in subsequent civil action arising from same incident).  The

Judgment of Conviction does not specify the reason for the restitution payment, but rather states

plainly that Castillo's total restitution payment was "$3,552.30 to Wayne."  Daly testified during

the grand jury proceeding that $3,552.30 was the amount of damage assessed on his police car

after the collision.

Daly's argument under Scott asserts that the guilty plea contradicts Castillo's story to the

extent that the court should not credit Castillo's testimony.  See 550 U.S. at 380-81.  In Scott, the

Supreme Court determined that a videotape depicting a high speed car chase so utterly

discredited the non-moving party's account of the events that the court should have relied on the

facts in light of the videotape, instead of the account offered by the non-moving party.  Id.  Scott,

however, is not the controlling Supreme Court decision for the issue before the court.

A conviction that raises the same questions of fact as a subsequent civil § 1983 action is

addressed in a different realm of Supreme Court jurisprudence.  In Heck v. Humphrey, 512 U.S.

477 (1994), the Supreme Court held that a § 1983 action that impugns the validity of the

plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed

on direct appeal or impaired by collateral proceedings.  The purpose of this requirement is to

avoid parallel litigation of probable cause and guilt.  Gilles v. Davis, 427 F.3d 197, 209 (3d Cir.

2005) (citing Heck, 512 U.S. at 484).  It "also prevents the claimant from succeeding in a [§

1983] action after having been convicted in the underlying criminal prosecution, which would

run counter to the judicial policy against creating two conflicting resolutions arising from the

same transaction."  Id.  In Gilles, the Court of Appeals determined that the plaintiff's underlying

20

disorderly conduct charge and his § 1983 First Amendment claim required answering the same question of fact—whether his behavior constituted protected activity or disorderly conduct.  Id. Thus, the court found that the plaintiff's claim was barred because it "could result in a conflicting resolution arising from the same conduct."  Id.

In this case, Castillo pled guilty to eluding in the second degree.  The elements of that crime require that while operating a motor vehicle, he knowingly fled or attempted to elude a police officer after receiving a signal from an officer to bring the vehicle to a stop; and that the flight or attempt to elude created a risk of death or injury to a person.  This plea pertains to the same questions of facts at issue in Castillo's claim—namely, whether Castillo attempted to escape by driving his car into Daly's police car.  The Judgment of Conviction and plea are premised on the fact that Castillo attempted to drive away, failed to stop his vehicle when the officers signaled to him to do so, and that that failure caused a risk of injury to any person.  That factual landscape is antithetical to a finding that when he saw the officers coming, Castillo put his car in park, and waited while Daly rammed his car into Castillo's vehicle.  Therefore, a finding in Castillo's favor on the present § 1983 claim for excessive force would result in a conflicting resolution arising from the same conduct and would necessarily imply the invalidity of his conviction for eluding in the second degree.  Castillo's claim is barred by Heck and Daly is entitled to summary judgment on this claim.

### iv.   Count Four:  Excessive Force During Arrest

Castillo claims that Defendants used excessive force when they assaulted Castillo by kicking and punching him and yelling racial slurs at him, in violation of the Fourth Amendment. Defendants argue that the court should grant summary judgment on this claim because (1) the record contradicts Castillo's account of the events, (2) even taking the events in the light most

favorable to Castillo, the force applied was reasonable and necessary, (3) Castillo's injury was de minimus, and (4) both officers are entitled to qualified immunity. Summary judgment will be denied based on the force allegedly applied by Defendants after Castillo was handcuffed.

At the outset, the court rejects Ellis and Daly's argument that summary judgment is merited here because of an absence of genuine issues of material fact. The record is replete with disputed facts and the court is in no position to make credibility determinations and weigh the evidence. Defendants flatly deny that they punched or kicked Castillo after they handcuffed him. They rely on a photocopy of Castillo's booking photograph as proof that he was not beaten about the face. However, the photocopy is very poor quality and therefore inconclusive. Daly and Ellis offer an account of the events written by Detective Captain Ireland, who interviewed Castillo about his arrest after Castillo filed a complaint form at the prison against Daly and Ellis on February 15, 2004. Ireland's report indicates that during that interview, Castillo did speak about rough treatment but did not specifically mention being punched or kicked. Castillo said he didn't tell Ireland the full story for fear of reprisal from the prison, where the interview took place. These conflicting accounts raise issues of credibility. Generally, cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment. See Abraham v. Raso, 183 F.3d 279, 294 (3d Cir. 1999) (citing Boyle v. county of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998)). There is no clear and undisputed evidence here, like the videotape in Scott that can obviate the need for a credibility determination. See Scott, 550 U.S. at 380. Therefore, the court will decline to grant summary judgment because Ellis and Daly have not met their burden of showing an absence of material facts in dispute.

Defendants next argue that even taking the facts in the light most favorable to Castillo, the force applied was necessary and reasonable. An excessive force claim under § 1983 arising

out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizure of the person.  Groman, 47 F.3d at 634.  To survive a motion for summary judgment, Castillo must set forth facts showing that a seizure occurred and, if so, that the seizure was unreasonable.  Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).  A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied.  Scott, 550 U.S. at 381.  If the court determines that a seizure has taken place, the next inquiry is of the objective reasonableness of the officer's use of force.  See Graham, 490 U.S. at 396.  The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. Additionally, the Court of Appeals has noted additional factors, including:  "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  Sharrar v. Felsing, 128 F.3d 810, 822 (1997).  Significantly, the Supreme Court has instructed in applying the objective reasonableness test that "not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers," is constitutionally unreasonable.  Graham, 490 U.S. at 396.  The reasonableness inquiry is objective, but should give appropriate scope to the circumstances of the police action, which are often "tense, uncertain, and rapidly evolving."  Id. at 397.

There is no question that there was a seizure when Daly and Ellis arrested Castillo.  The court must therefore determine whether Castillo presents sufficient facts to support a jury finding

that the seizure was unreasonable. The court finds that Castillo's version of the events, if accepted as true, supports a finding that Defendants used excessive force when they kicked and punched him after he was wearing handcuffs.

Castillo asserts that he lost consciousness during the collision, and woke up to the Daly and Ellis pointing their guns at him. Castillo claims that he did not resist. Daly dragged him out of the car and jumped on his back and pushed his face into the ground. Then, Daly handcuffed him. Ellis and Daly believed that Castillo was a robbery suspect who could be armed and dangerous to their safety. Castillo had attempted to evade arrest by crashing the Ford Explorer into Daly's vehicle. Therefore, Defendants' attempts to check for weapons and physically restrain Castillo in the beginning of the arrest were reasonable in light of the information they had about Castillo, even if he was not offering a great deal of resistence. However, after Castillo was handcuffed and while he was still on the ground, Defendants kicked and punched him, and smashed his face into the ground again. Once Castillo was wearing handcuffs, there was no legitimate reason for Daly and Ellis to assault him if he was not physically resisting arrest or attempting to flee and no longer posed a danger to their safety. A reasonable jury could find that repeatedly punching and kicking Castillo after he was restrained was an unreasonable and excessive use of force. Castillo will be allowed to present this claim before a jury.

Castillo claims he suffered a split lip and that his back injury was exacerbated by the assault. He contends that his face was swollen and that he was bleeding from the eyes, ears and mouth. Defendants argue that these injuries are too insubstantial to support Castillo's § 1983 claim. However, Castillo is not required to prove that he incurred a significant injury for the court to impose liability for an unreasonable use of force. Sharrar, 128 F.3d at 822 (treating plaintiff's claim that he suffered a dislocated shoulder when he was placed in police car as one

factor in the resolution of a Fourth Amendment excessive force claim).  Whether physical injury resulted from an altercation with the police, and to what extent, is but one factor to be considered in light of the totality of the circumstances.  Id.  The possible lack of serious injury here does not outweigh the court's determination that a reasonable jury could find that Defendants used excessive force after Castillo was wearing handcuffs.

Finally, Defendants argue that they are entitled to qualified immunity.  "Qualified immunity is intended to shield government officials performing discretionary functions, including police officers, from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotations omitted), cert. denied, 543 U.S. 956 (2004).  A defendant has the burden to establish that he is entitled to qualified immunity.  Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).  Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).

The court has already determined that the facts alleged, taken in the light most favorable to Castillo, show that the Defendants' conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  The next inquiry is to determine whether that right was clearly established.  Id.  Qualified immunity from suit is applicable unless the official's conduct violated a clearly established constitutional right.  Pearson, 129 S. Ct. at 816.  A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  The Court of Appeals has "adopted a broad

view of what constitutes an established right of which a reasonable person would have known."

Kopec, 361 F.3d at 778.  The Court of Appeals applies the Graham and Sharrar factors to

evaluate whether rights are clearly established.  See, e.g., Estate of Smith v. Marasco, 430 F.3d

140, 149-50 (3d Cir. 2005).  Physical violence against an arrestee after he is secured and is not

resisting arrest is clearly prescribed by Fourth Amendment jurisprudence.  Defendants do not

even argue that the officers could have believed that kicking and punching Castillo after he was

in handcuffs was reasonable or acceptable.  At this stage in the litigation, Defendants are not

entitled to qualified immunity from this claim.

Finally, Defendants claim that they are entitled to immunity under the New Jersey Tort

Claims Act, N. J. Stat. Ann. § 59:3-3.  This argument does not change the court's decision to

deny summary judgment on Count Four.  Conduct by persons acting under color of state law

which is wrongful under § 1983 cannot be immunized by state law.  Martinez v. California, 444

U.S. 277, 284 (1980).

     *v.*     ***Count Five:  Denial of Medical Attention***

Castillo claims that Defendants denied him medical attention in violation of the

Fourteenth Amendment.  Castillo states that when he arrived at the station, he asked Ellis and

Daly if he could see a doctor because his lip was bleeding.  He did not claim during his

deposition that he complained about any other injuries to the officers at that point.  Daly or Ellis

gave Castillo some tissues, gauze, and a moist toilette to wipe his lip.  (Id. 59:4-5.)  However,

they refused to allow Castillo to use a phone to call a doctor for "safety reasons."  (Id. 57:13.)

Daly explained the safety reasons; Sergeant Shenekji had ordered that Castillo was not allowed

to make a phone call for fear that allowing a phone call could compromise the ongoing bank

robbery investigation and possibly endanger officers who were guarding the unsearched hotel

room.  (Daly Police Report at 3-4.)  Castillo stated during his deposition that he did not later seek treatment for the cut on his lip, and the lip healed without medical attention.  (Castillo Dep. 57:10)  The information offered by Castillo and Defendants does not conflict.  Therefore, judgment as a matter of law on this claim is appropriate.

"Failure to provide medical care to a person in custody can rise to the level of a constitutional violation only if that failure rises to the level of deliberate indifference to that person's serious medical needs."  Groman, 47 F.3d at 636-37 (applying the deliberate indifference standard to events that occurred while plaintiff was a pretrial detainee).  A bloody lip, the only complaint that Castillo voiced to the officers at the time, can hardly be categorized as a serious medical need.  Furthermore, Defendants did not exhibit indifference; instead, they provided Castillo with materials to clean his wound, which subsequently healed without medical care.  Summary judgment will be granted in favor of the Defendants on this claim.

### vi.      Count Six:  Denial of Access to Telephone

Castillo claims that he was denied the right to use the telephone to call home or to call a doctor.  As a preliminary matter, the court notes that this claim does not implicate the Sixth Amendment right to counsel, because Castillo does not allege that he wished to contact his attorney.  The court is unable to discover any support for a federal Constitutional or statutory right to make a phone call immediately upon arrest.  The Courts of Appeals for the Sixth and Sevenths Circuits have found that no federal right to make phone calls after arrest exists.  Harrill v. Blount County, 55 F.3d 1123, 1126 (6th Cir. Tenn. 1995) ("The right to make a phone call immediately upon arrest is not a recognized property right, nor is it a traditional liberty interest recognized by federal law."); State Bank of St. Charles v. Camic, 712 F.2d 1140, 1145 n.2 (7th Cir.) ("[T]here is no constitutional requirement that a phone call be permitted upon completion

of booking formalities."), cert. denied, 464 U.S. 995, 78 L. Ed. 2d 686, 104 S. Ct. 491 (1985).

Deprivations of the rights of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment, as stated by Bell v. Wolfish, 441 U.S. 520, 535 (1979) and its progeny.  The standard is whether a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective.  Id.  Here, the Defendant's refusal to allow Castillo to make a phone call to a doctor or family member for a number of hours after his arrest was reasonably related to the legitimate government interest in preserving the integrity of the ongoing bank robbery investigation and in the protecting the safety of officers who were guarding Castillo's unsearched hotel room.  Summary judgment for Count Six will be granted.

### vii.    Count Seven:  Perjury

Castillo's assertion that Daly committed perjury during the grand jury proceedings is a direct attack on the validity of the state court conviction and as such is barred by Heck.  See 512 U.S. at 479-83, 487.  Furthermore, a witness testifying before a grand jury is immune from § 1983 liability.  Kulwicki v. Dawson, 969 F.2d 1454, 1467 (3d Cir. 1992); Briscoe v. LaHue, 460 U.S. 325 (1983).  This claim is ripe for dismissal.

### viii.    State Tort Claims

Castillo did not allege that Defendants violated any specific state tort.  Given that pro se complaints are to be construed liberally, the court could view Castillo's Complaint as alleging a cause of action under a New Jersey tort or common law cause of action, such as assault and battery or failure to render medical care.  See Weaver v. Wilcox, 650 F.2d 22, 26 (3d Cir. 1981) (construing pro se complaint as stating a cause of action under § 1983 although pro se litigant did not specify § 1983 in his complaint).  However, Defendants argue, and the court agrees, that any state tort or common law claim would be barred based on Castillo's failure to comply with the

Tort Claims Act, N.J. Stat. Ann. §§ 59:8-3, and 59:8-7, requirement to file a Notice of Tort Claim.

## III.  CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Defendants on Count One for the alleged unlawful search of Castillo's hotel room because that claim it is supported by insufficient facts; granted on Count Two for search of Castillo's vehicle because two exceptions to the warrant requirement apply to the search; denied on Count Four for excess force because a reasonable jury could credit Castillo's version of the events for those claims; and granted on Count Five for denial of medical attention and Count Six for denial of access to a telephone because those claims are legally insufficient.  As for Count Three and Count Seven, which only stated claims against Daly, both are denied as barred by Heck.

The Court will enter an order implementing this opinion.


____s/  Dickinson R. Debevoise____ _____
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: November 24, 2009